This morning and the first is Dutton Myrie v. Atty. Gen. No. 16-1599, Mr. Kibler and Ms. Miles. Whenever you're ready. May it please the court, my name is Nathan Kibler, attorney for the petitioner Louis Dutton Myrie. With the court's permission, I would like to reserve three minutes for rebuttal. That's fine. Thank you, Your Honor. Mr. Dutton Myrie is seeking relief under the U.N. Convention against Torture. His case is based primarily on the repeated murders and attacks against his family by the MS-13 gang, for which the Panamanian police have made no arrests. The regulations say that you have to consider all the evidence. But the burden is still on Mr. Dutton Myrie to show what the evidence is that would indicate that there has been torture and he has a future. He believes that future torture will occur if he goes back. What was that evidence? That evidence was the repeated murders and attacks against his family in Panama, for which the Panamanian police have made no arrests for over the years. And also the MS-13 attack against him previously, for which the police were called yet did not respond. And under this court's precedent, those facts would be sufficient to establish acquiescence to torture. Those murders occurred a significant amount of time before Mr. Myrie wanted to return to Panama, didn't they? Yes, they started in the 90s through basically a few years ago in terms of the attacks. So you want us to conclude that because some of his family members were murdered several years, if not at least a decade, before he's going to return to Panama, that the same conditions continue in Panama? Correct. And I think the fact that the murders have continued over the years... I'm sorry, murders continue over the years? Yes, they've continued up until the present of the attacks, and then when he was previously deported, he was attacked as well. And would that be by the same so-called EM or MC gang? MS-13. MS-13? Yes, it's by the MS-13 gang. How do you know that? I try to find some connection in the record that, yes, these are the people that were responsible for those murders that the Panamanian authorities could not stop or deter, but there doesn't seem to be any connection in the record. Yes, Mr. Dunmirey testified extensively to that fact, and the immigration judge credited completely his testimony, and even through the present, the fourth decision, his credibility, it was not denied on credibility grounds, so this court has to accept... Although we got dangerously close to having an adverse credibility determination made. Yes, I mean, I think a fair reading would be, but to prevent a spurious appeal, he didn't make a credibility determination, although under the BIA precedent and this circuit court precedent, credibility determinations are in the law of the case, and so he would have been required to abide by those. It seems as if what happened over the course of four hearings and going up to the BIA and back and up and back, et cetera, it seems as if the judge here has begun to do some research on his own as to whether MS-13 is in Panama, didn't find anything, and is becoming more and more skeptical that, in fact, MS-13, on whom your client hinges his claim, is in Panama. I mean, that certainly is an interpretation of what's going on here also. What evidence do you have that, for example, the incident that his girlfriend called the police when he was, was it stabbed in 2005? Yes. And she did not call the police. And what evidence do you have that MS-13 was active at that time? She did call the police, and there's a... He didn't call the police. He didn't call the police. He didn't call the police, which the BIA focused on that, which seems incorrect because there is testimony in the record that his girlfriend did call the police. The police did not respond. Based on the attack and what they said during the attack, there's evidence that it was that MS-13 in terms... They said they were trying to finish off his family, and they had tattoos that were consistent with being members of the MS-13 gang. Is MS-13 confined to Panama? I gather that's not so. No, it's not. As a matter of fact, it's also present in New York City. I think it is in the United States, and it's also in... Well, it's primarily in L.A. was one of the originating points, was it not? Yes, I think the history is it originally was in L.A., and then there was mass deportations. Is there any evidence that they have a greater presence in Panama than they do in, let's say, the United States? No, I don't think that's necessary to determine acquiescence. To look at acquiescence to torture, you look at whether a public official would acquiesce. And I don't think it, like whether the government as a whole or whether MS-13 is present in other cases... It was the IJ's finding that the Panamanian government does not acquiesce in this type of violent conduct. Isn't that so? It was hard to tell from the immigration judge's ruling, but I think that is ultimately its determination. But it was based on... It would be even harder to tell from the BIA's determination, right? Correct. As far as there are two sentences that dealt with acquiescence. Correct. The BIA upheld the immigration judge's determination of acquiescence for, one, that the government of Panama actively engages gangs and combats crime, and, two, although the applicant was attacked, he never recorded the incident to the police. Both of those reasons are improper under this Court's prior precedent. Before we get there, there's a jurisdictional matter. Our learned presiding judge authored the Kaplan case. It seems that the government has maybe cherry-picked a provision that says that acquiescence is a factual determination subject, and in which case we wouldn't have jurisdiction over it, right? You say it's maybe hybrid. Why don't you tell us exactly what your position is? Correct. There are a couple sentences at the end of Kaplan that indicate that acquiescence would be reviewed for clear error, but I think if you look at this Court's prior precedent, it says acquiescence is a legal standard, and thus applying a legal standard to a set of facts is a mixed question of law and fact, and then a mixed question of law and fact to review... Doesn't Kaplan say that as well? Yes, and I think Kaplan does set the appropriate framework to analyzing the question. The first question is what is likely to happen if the petitioner is removed. In the acquiescence context, that's what are the public officials likely to do if the petitioner is removed. And the second question, the first question is a factual question to review for clear error. The second question, the legal question to review de novo, is does what is likely to happen meet the legal definition for acquiescence? In Kaplan, he referred to torture. I think he just substituted out torture for acquiescence, and that's the framework that this Court analyzes mixed questions of law and fact in pretty much every context. Well, here it appears that there, and it's been noted by both the IJA and the BIA, that there was active, purportedly, opposition of the government to drug gangs in Panama. So then you really have to rely, as opposed to acquiescence, would have to be some type of willful blindness. They're opposed to it, but in fact they're not doing anything about it. What evidence do you have of that? Correct, and I think that's where the actual... You look at the specific circumstances of this case where you have these murders occurring by the MS-13 gang over the years that the Panamanian police have made no arrests on. They failed to respond to an attack previously on Mr. Danmari. How does that amount to willful blindness? I mean, there are lots of homicides in Panama and other Latin American countries, and in the United States, that law enforcement simply doesn't know, cannot solve, doesn't know who is responsible. I mean, that happens everywhere. Why does that amount to, in this case, willful blindness? Because for whatever reason, for this particular family and this particular person, they refused to assist them. And I think it's similar to in Valley Diasimo 1, where this court held that there was five police reports that the government there did not respond to, and also it would say it was responding, but was not doing anything about it. And this court held that was sufficient to establish acquiescence under Silva-Ramifa. What do we make of the BIA's finding in its opinion and its statement as follows? We find no clear error in the immigration judge's finding that the government of Panama would not be acquiescent to any torture of the applicant upon his return to Panama. Is this basically the BIA adopting the immigration judge's conclusion? No, I think that statement right there shows that the BIA was reviewing the immigration judge's ultimate legal conclusion, which was whether the government of Panama would acquiesce to torture, under the clearly erroneous standard of review, which shows that they applied the incorrect standard of review, that they should have reviewed that ultimate question to know better. How about the statement in the BIA's opinion? We agree with the immigration judge's decision determining the applicant is ineligible for protection under the Convention Against Torture. Isn't that essentially adopting the BIA's opinion? Not when you have the prior, even with that, it shows that they've applied the incorrect standard of review previously. I don't know if we can ignore the prior statement that they were conducting clear air review of the overall legal conclusion. You know, you made an interesting argument, I thought, in your brief. You pointed out, perhaps, that we should be looking at something other than the Panamanian government, maybe looking a little more locally, maybe the police. What kind of a rule would we forge there if we accept your argument? And wouldn't it be difficult to prove? I mean, all the different locales all across the world, whether they might acquiesce or not? I think that's what the CAT regulations require. The specific term is acquiescence of a public official. The regulations could state acquiescence of a foreign government. So I think, just under the plain reading of the regulation, we have to look at a public official. And that gets to, overall, what these cases are about. Is there any evidence to record about a particular official in this case? Yes, I think there is. When he was returned, the police gave him name books and recognized him as being Gloria from 8th Street, being from that same family. And they also, the specific police officers here who were not responding and who were not investigating or arresting anyone for the repeated murders of his family. Was there any connection between those murders and this MR-13 gang? Yes, there was. Is there an official finding that they are the ones who committed these offenses? There is a letter that both the I.J. and the B.I. ignored from a Panamanian police official that says that the MS-13 has murdered his family over the years and that his mother has reported threats as well. So there is evidence in the record. The B.I. ignored it. Thank you. Ms. Miles. Good morning, Your Honors. I'm Erica Miles for Attorney General Lynch. Let's start with that letter. The immigration judge did not specifically reference a letter from the Department of Public Safety. It was referenced by the B.I.A., but they didn't go into it at all, didn't consider it. Other than to say it's insufficient to establish that the immigration judge did not consider this evidence. Well, if he didn't reference it and P.H. Chacon-Villegas says that you have to deal with all evidence, don't we have a problem from the get-go? The immigration judge did explicitly say, considering all the evidence, for the third time, that Mr. Dunn and Meary did not. That's conclusory. I mean, all the evidence includes A, B, and C, and D, whatever. And here, the judge doesn't really say anything other than, he did not consider all these things without going into detail as to why he rejects those evidences as not mounting up to enough to show eligibility for cat protection. This was the fourth time this case was before the immigration judge, and this is his fourth decision finding the evidence to be insufficient to meet his burden of proving willful blindness on the part of the Panamanian government. The immigration judge outlined his claim and all the facts, including the deaths, took at face value murders of the family members, and that it was by gangs. That police report only confirms that it was by gangs and that there was investigation. Did you present this case before the immigration judge? No, no. Homeland Security attorneys appeared before immigration judges. What was the evidence before the immigration judge that MR-13 operates in Panama? There wasn't a significant amount of evidence. Incidentally, what year are we considering here for determining whether... His incident occurred in 2005, but the prior incidents then predate that, mostly in the mid-90s leading up to 2005. Should I focus more on whether MR-13 is operating in Panama as of 2005? MS, I'm sorry. Well, your focus should be determining whether or not you have a legal question before you, and the government's contention is that all of the challenges and considerations that we're talking about here are all factual in nature. They're all about the weighing of evidence. What do you say is the legal question that we have to confront? I would say there is no colorable legal question before you, and that's because the challenge he raises is whether or not the correct standard, legal standard, was applied. And as Judge Gervais pointed out, there's a two-prong analysis. One is factual and one is legal under Kaplan. The factual one is what is more likely than not to happen, meaning will the Panamanian government more likely than not be willfully blind? The legal question is do those facts then add up to the legal definition about the essence? On that first point, which is a factual issue, do we look at the BIA's opinion or do we look at the IJ's findings? You look at both. The board affirmed the immigration judge's decision. It is a fairly summary affirmance referencing the immigration judge's pages. Is it in essence an adoption of the IJ's findings? In this case, yes, it is, because it relied on, it found no clear error in its first statement, and then it explained briefly that it relied on the immigration judge's analysis and cited the immigration judge's decisions and pages. It didn't get into much determination of its own. This court has much case law that will say that to the extent the board is affirming and relying on the immigration judge's reasoning, you should look at the immigration judge's reasoning with respect to that finding. This is the only finding in the case because this is the only determination the board made that he didn't need his burden of proof to show willful blindness. How about his conclusion of law? Yes, you review the conclusion of law, but it was not at issue. The conclusion of law is that he didn't need his burden of proof for showing acquiescence, but the real challenge in this case was did the evidence add up to meet his burden of proof? Do you agree that this is a mixed question of fact and law that we have before us? No. The only question here truly is whether or not the evidence, all of which was considered. His claim is that all of it wasn't, but the record shows that all of it was. So that's not a horrible claim. Where does the record show that the letter from the Department of Public Safety in Panama was considered by the AJ in this round? By the immigration judge? Well, the immigration judge said all of the evidence was considered, but just look at what the BIA had to do here. Next to the last paragraph. The applicant argues that the immigration judge violated his right to due process by not considering all the evidence and exhibiting bias. However, although the immigration judge did not specifically reference the letter from the Department of Public Safety in Panama, this is insufficient. That's fairly conclusive. Then it goes down. Finally, the applicant argues that the immigration judge failed to comply with the remand by considering evidence of future torture. However, even if the immigration judge failed to consider evidence of future torture, the applicant has not established how this would impact the outcome of proceedings. Then you go to P.S. Chacon, and it says, according to regulation on page 313 of that opinion, you must consider all evidence, and you need to tell us how you considered that evidence. Going back, not only citing the regulation, but a string of cases. How do we know, other than the conclusory statement that he did consider all evidence, that he considered, for example, the letter of the Panamanian police? We know because of the contents of the letter. What that letter stood for, or informed about, was fully considered by the immigration judge. How do I know that? How do I know that? Don't you have to tell me that I've considered that letter, and here's why I don't think it rises to the level that Mr. Dutton-Meyrie believes it does. In previous decisions, the immigration judge has discounted the letter with a fuller explanation. In this decision, the immigration judge did not specifically mention this letter, but mentioned all of the facts that were raised in that letter. And those facts were very limited. They were limited to identifying the people who were killed. The immigration judge recognized that. It was limited to the fact that the police was aware of it and investigated it. The immigration judge considered that. That was all, and that gangs were probably the cause of death. The immigration judge also considered that. So any of the facts that were presented in that letter were all considered by the immigration judge, but all of the country conditions evidence, the lack of any evidence showing willful blindness in any event whatsoever, and the country conditions evidence then in addition disproving in a way that there's willful blindness where the Panamanian government does indeed actively then come back. So it's the absence of evidence here that was important. It does show that the immigration judge's decision does show that it considered all of those essential facts that were contained in that letter. If it does show, doesn't he have to state the particular bit of evidence and why he discounts it or does not discount it? In this instance, there are court decisions that say when an immigration judge says all the evidence was considered, that that should be a no. The immigration judges don't have to write an exegesis on every piece of evidence that was considered or all of what went into the weighing of evidence. But wasn't that letter fairly important? No, it was not that important because it only corroborated facts that were already taken as credible. The fact of the deaths of the family members, the fact that it was gang members that probably perpetrated those killings, and the fact that there was some form of investigation. All of that information was taken as credible, and that letter provided no further probative information to support his case. So the immigration judge, in fact, really did consider all of it and take it as being credible and true. Isn't that the date of the letter? The date of the letter? I think it was from 2012 when proceedings first began. Is it pointed by record? Yes, it is. It's in Petitioner's Appendix, Volume 2, Appendix Page 151. So can we go back to the legal... You're saying this is just a purely legal question. I'm not really quite sure what your position is, because on the one hand you pointed out in Kaplan you stated it has to do with both facts and law, but yet this is just a pure legal question. Why is that? This is not a pure legal question. I'm sorry, I'm sorry. A pure factual question, I'm sorry. Because all of the challenges that Petitioner's counsel is raising have to do with the evidence and the weight of evidence. He's challenging the consideration of it. Well, here, as I've just gone through and described it, all of it was in fact considered. So as long as you agree that all of the evidence was considered or... Doesn't it all funnel into ultimately a decision on whether the legal standard is met? Isn't that a legal question? Everyone agrees that the legal standard is to show willful blindness, but whether or not somebody meets their burden of proof to show that, which is an issue in this case, is a factual question about the weighting of the evidence. But everyone agrees that willful blindness is the standard and the other standard is that the immigration judge must consider, and warn, must consider all of the evidence. Those are the two legal standards. So the one main challenge we have with Petitioner's counsel is whether or not all of the evidence was considered. And our position is it was all considered and his challenge really is to the weight of the evidence. But we all agree that willful blindness, the legal definition of acquiescence, is what needed to be met. Okay. The... So what happens if this case goes back? Is there still a discretionary decision that has to be made by the IJ or the BIA, or is it once you're eligible you get cat protection? Once the burden of proof has been met by Petitioner, then he would qualify for deferral of the removal. Okay. So... All right. Go ahead. Quickly as advised, I would just like to quickly add that none of us have... No, actually, that's fine. I was actually going to ask you about that. I mean, there's a fairly high bar for due process claims, but on the other hand, we've got an IJ who seemingly, if you read it one way at least, at least as your adversary has, has said, I won't grant this under any circumstances. I mean, can that... Is that kind of an IJ if this goes back that can hear this case again? That... We agree that it is not the most professional of remarks. Right. It sounds like even this case has been sent back to him two or three times and just fed up. Yes. And I read this meeting, this case meeting, these facts, this record,  you haven't met your burden of proof, when you can't, on this record, show acquiescence by the Panamanian government. That's not a statement that says if something new would happen or new compelling evidence were to come forward, then you couldn't qualify. It's limited to this case, this claim, this evidence. So should this same IJ hear it again if for some reason we send it back? I certainly hope it's not going back again, but that's within the Executive Office for Immigration Review's purview to decide how to manage its cases. But I've seen courts advise and recommend... We've done it. You have. You can do it a favor, I think. Can I order it? Sure we can. You can order it. Well, you can order it, but the agency will not have to comply with that order. It's fully within their authority. Okay. This case stems from an order of removal that goes back to 1999, I think it is. Is that... The original, I believe, is somewhere in the 90s, yeah. I look for that order of removal, which is in a court document. Do you have that as part of the U.S. Court of Records? Yes, in the early pages. Okay. It's at the very, very end of the record. Let me see if it's in the petitioner's volume. I didn't bring the end of the record with me. I don't believe it's in his appendix documents either. No, but it is in the record for certain, but it's at the very end. Could you get us a reference to that? Yes, I will. You just notify the clerk. I will. To the original order. Yes, he was removed for drug trafficking, which is why he wasn't eligible for many forms of relief in this case. If the judges don't have any further questions, then I ask that the court dismiss the petition for review with respect to the immigration judge's denial of CAT protection and deny it with respect to the due process challenge. Thank you. Thank you. Mr. Kibler? Thank you, Your Honors. With respect to jurisdiction, we're making the exact same argument that was made in P.S. Chacon, the exact same argument that was in the government's prior motion to remand, which resulted in this court remanding the case, and the exact same argument that was made in that. All those cases, this court only had jurisdiction to review questions of law and constitutional questions. Going back to the letter from the Panamanian police, I think it's clear by reading his decision that he didn't consider it at all because it provides evidence that the MS-13 was behind the attacks against Mr. Dutton and Myrie Stanley. I haven't had the occasion to read the letter that you're referring to. It is part of the record, I assume. Correct. And what is the import of the letter? The import states that the Panamanian police is aware that the MS-13 gang has perpetrated murders against Mr. Dutton and Myrie Stanley in the past, and they're aware of current threats against his family. The immigration judge stated that there's no evidence in the record that the MS-13 is behind the deaths of his family. If the immigration judge would have considered that letter, he wouldn't have been able to make that finding. Is the letter relevant on the issue of acquiescence? Yes, I mean, it demonstrates acquiescence because it demonstrates that over time... It demonstrates... Assuming it's accurate as you presented, it demonstrates awareness, but how does that translate into acquiescence? Because they have not done anything over the years to prevent those attacks, and they haven't made any arrests on any of those attacks. And because they have made no arrests, they acquiesce in the killing of people in Panama. Yes, it would be evidence of willful blindness by not making arrests and then not responding to attacks against Mr. Dutton and Myrie. Also, with respect to the due process violations, the statements may be under... We realize the due process is high standard, but the statements may be or seem unprecedented, where you have a court stating, it's been a significant waste of this court's time waiting through such nonsense, making a ruling to prevent a spurious appeal, and stating under... Not under any circumstance will this CAT claim be granted. I think the Attorney General's response here shows that where they could not affirmably state, like, this should go back to the immigration judge. I think if the immigration judge was unbiased, it would be... Generally, you would say it would be fine to be able to send the case back to that immigration judge. Thank you. I think for the reasons stated here today in our brief, we request that this decision be remanded to the DIA. Thank you very much. Thank you to both counsel for well-presented arguments. Mr. Kibler, did you take this case pro bono? Yes, Your Honor. Well, thank you very much. You have our gratitude for doing so. Thank you. Much appreciated. We'll call our... If I may, I have the record set for you. Sure, go ahead. It's in our brief. The record set of the original removal orders are pages 1626 and 1630. Thank you very much. Thank you very much.